# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **BARBARA J. KEITH,** | : | **Case No. 1:07-CV-3621** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN M. O'MALLEY** |
| **v.** | : | |
| **COMMISSIONER OF SOCIAL SECURITY,** | : | **MEMORANDUM & ORDER** |
| **Defendant.** | : | |

This is an action for judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") denying in part the application of the Plaintiff, Barbara J. Keith, for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*., and granting Keith a closed period of disability.  Pursuant to Local Rule 72.2(b), this matter was referred to Magistrate Judge James S. Gallas for preparation of a Report & Recommendation ("R&R").  In his R&R, the Magistrate Judge recommended that the Commissioner's final administrative decision be affirmed as supported by substantial evidence and that final judgment be entered in the Commissioner's favor.  (Doc. 12 at 7-8.) Keith has filed timely objections to the R&R (Doc. 13), but the Commissioner has not filed a response.   For the reasons articulated below, the Court **OVERRULES** Keith's objections, **AMENDS** and **ADOPTS** the R&R, and **AFFIRMS** the final administrative decision of the Commissioner granting Keith a closed period of disability.

## I.   <u>BACKGROUND</u>

On February 10, 2003, Keith filed an application for DIB and SSI, alleging disability as of an alleged onset date of January 31, 2003 due to limitations primarily related to an anemia impairment.  Keith's application was administratively denied at the state agency level, and she thereafter requested a *de novo* hearing before an Administrative Law Judge ("ALJ").  On July 14, 2005, ALJ Mark M. Carissimi conducted an evidentiary hearing.  At the hearing, the ALJ solicited testimony from Keith, who was represented by attorney John S. Regas; Frank Cox, M.D., who appeared and testified as a Medical Expert ("M.E."); and Nancy J. Borgeson, Ph.D., who appeared and testified as a Vocational Expert ("V.E.").

On September 19, 2005, the ALJ issued a partially favorable decision to Keith.  The ALJ first found that Keith established disability status as of her alleged onset date of January 31, 2003.

Specifically, at step three of the five-step sequential analysis,[1] the ALJ found that Keith was "disabled" as of January 31, 2003, because the medical evidence on the record established that she suffered from a severe impairment of anemia that met the listed impairment in Appendix 1 of Subpart P of Regulations No. 4.  The ALJ, however, then found that her anemia impairment had improved and no longer met the listed requirements of Section 7.02 as of December 31, 2004.  In

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a).  The Sixth Circuit summarizes the five steps as follows:

(1)     If a claimant is doing substantial gainful activity, he is not disabled.

(2)     If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3)     If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5)     Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

-3-

this regard, the ALJ made separate findings related to Keith's cessation of disability.[2]  In short, the ALJ concluded at step five of the five-step sequential analysis that Keith retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work based on her exertional and nonexertional limitations.  Based on this RFC, and relying on the testimony of the V.E., the ALJ concluded that Keith could perform a sufficient number of jobs despite the limitations caused by her impairments and that she therefore was no longer disabled as of December 31, 2004.[3]  As such, the ALJ awarded Keith a closed period of disability commencing on January 31, 2003 and ending February 28, 2005, the end of the second calendar month following the month in which her disability

---

[2] The ALJ's opinion might have elicited some confusion, because the ALJ made separate findings related to an initial determination of disability, as well as a cessation of disability; however, this kind of determination for a "closed" period of disability at a single hearing is proper.  *See Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972).  In *Myers*, the Sixth Circuit held that a single hearing is appropriate for determining whether a disability exists *and* the duration of that disability.  *Id.*  The Court stated that while the "Act itself does not provide for a closed period of benefits . . . the framers of the Act [clearly] contemplated that some applications for benefits would be made which would result in an award of benefits after the claimant had recovered from this disability."  *Id.* at 1267 (referring to 42 U.S.C. §§ 416(i)(2)(D),(E) and 425).  Moreover, because the Act "makes provisions for the suspension of benefits when the Secretary comes into possession of information that the disability has terminated, it should be obvious that multiple hearings would be a waste of time and effort."  *Id.* (citing 42 U.S.C. § 425).  Lastly, the Court concluded that the standards to be applied in reviewing a termination of benefits are not materially different from those applied in reviewing the denial of benefits.  *Id.*

[3] *See* 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594(a),(b)(3); *Cutlip v. Sec. of Health & Human Servs.*, 25 F.3d 284 (6th Cir. 1994).  Here, the implementing regulations for a cessation of disability incorporate many of the standards set forth in the regulations governing initial disability determinations under the Social Security Act.  *See* §§ 404.1594(b)(5),(f)(7); *Nierzwick v. Comm'r of Soc. Sec.*, 7 Fed. Appx. 358, 361 (6th Cir. 2001) (citing *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991)).

-4-

ceased.[4]

Subsequently, on October 3, 2007, the Appeals Council denied Keith's request for review of ALJ Carissimi's decision, thus rendering the ALJ's decision the final administrative decision of the Commissioner.

On November 21, 2007, Keith sought this judicial review of the Commissioner's final administrative decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking a partial reversal of the ALJ's award of a closed period of DIB and SSI.  (Doc. 1.)  As noted, Keith's action was referred to Magistrate Judge Gallas for a R&R, and the Magistrate Judge recommended that the Court affirm the Commissioner's partial denial of DIB and SSI.  (Doc. 12 at 7-8.)

More specifically, in his R&R, the Magistrate Judge found in favor of the Commissioner on both issues that Keith raises on appeal.  (*Id.*)  Before the Magistrate Judge, Keith argued that:  (1) the ALJ erred in failing to include in his RFC any limitations arising from Keith's upper-extremity neuropathy; and (2) the ALJ erred in failing to give proper weight to the opinion of Keith's treating psychiatrist, Dr. Laurencic.  Regarding the first issue, the Magistrate Judge determined that the ALJ's finding that Keith's neuropathy was not a "severe" impairment was supported by substantial evidence, because the ALJ relied on the medical reports of Dr. Segal and Dr. Kadhim, and both physicians reported "normal" findings for Keith's upper-extremity neuropathy.  (*Id.* at 7.)  Regarding the second issue, the Magistrate Judge ultimately concluded that the ALJ properly

---

[4] For determining the duration or cessation of a disability, the ALJ must find that:  (1) the claimant experienced medical improvement; (2) her medical improvement was related to her ability to work; and (3) such improvement is to the extent that claimant can perform substantial gainful activity.  *See* 20 C.F.R. §§ 404.1594(a),(b)(1).  The ALJ properly concluded that the claimant's medical improvement was related to Keith's ability to work, because "[i]f medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most favorable decision, we will find that the medical improvement was related to your ability to work."  20 C.F.R. § 404.1594(c)(3)(I).

afforded Dr. Laurencic's opinion less than controlling weight for two valid reasons:  (1) lack of supportability; and (2) lack of consistency with the record as a whole.  (*Id.* at 4.)  Prior to reaching this conclusion, however, the Magistrate Judge also determined that the ALJ erred in part by providing the following two invalid reasons:  (1) that Keith's regularly scheduled visits with Dr. Laurencic, in the absence of hospitalization, negated the finding of a mental impairment disability; and (2) Dr. Laurencic's findings were minimal and not supported by "objective results."  (*Id.* at 3-4.)

On December 23, 2008, Keith timely filed two objections to the Magistrate Judge's R&R:  (1) the Magistrate Judge failed to show that Keith's upper-extremity neuropathy was not "severe," because the evidence on the record substantiates a finding of a "severe" impairment; and (2) the Magistrate Judge erred in concluding that Dr. Laurencic's opinion was inconsistent with the record and lacked supportability, because Dr. Laurencic provided "detailed opinions by way of [an] initial evaluation report and [a] detailed functional capacity questionnaire."  (Doc. 13 at 2-6.)

To date, the Commissioner has not filed a response to Keith's objections to the R&R.  As the time for responding has expired, *see* Local Rule 72.3(b), the objections are now ripe for determination.

## II.  <u>STANDARD OF REVIEW</u>

In cases that are referred to a magistrate judge for preparation of a R&R, the Federal Magistrate Act requires that a district court conduct a *de novo* review only of those portions of a R&R to which the parties have made an objection.  28 U.S.C. § 636(b)(1)(C).  The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id.*

A district court's review of a final administrative decision of the Commissioner made by an ALJ in a Social Security action, however, is not *de novo*.  Rather, a district court is limited to

examining the entire administrative record to determine if the ALJ applied the correct legal standards in reaching his decision and if there is substantial evidence in the record to support his findings. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

"Substantial evidence" is evidence that a reasonable mind would accept to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence standard requires more than a scintilla, but less than a preponderance of the evidence. *Id.* To determine whether substantial evidence exists to support the ALJ's decision, a district court does "not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Further, a district court must not focus, or base its decision, on a single piece of evidence. Instead, a court must consider the totality of the evidence on record. *See Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

In fact, if there is conflicting evidence, a district court generally will defer to the ALJ's findings of fact. The Sixth Circuit instructs that, "[t]he substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a *zone of choice* within which the decision maker can go either way without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)) (emphasis added). Accordingly, an ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Nevertheless, even if an ALJ's decision is supported by substantial evidence, that decision will not be upheld where the Commissioner "fails to follow its own regulations and where that error

-7-

prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## III.  DISCUSSION

Keith raises two issues on this appeal, and both pertain to the ALJ's findings regarding Keith's cessation of disability status on December 31, 2004. (Doc. 10 at 4, 6.)[5] First, Keith argues that the ALJ's determination that her disability ceased was not supported by substantial evidence, because the ALJ failed to properly include any limitations from her neuropathy condition into his RFC. (*Id.* at 4; Doc. 13 at 2-4.) Second, Keith argues that the ALJ erred in failing to afford the proper deference to the opinion of Keith's treating psychiatrist, Dr. Laurencic. (Doc. 10 at 6; Doc. 13 at 4-7.) For the reasons explained in more detail below, however, the Court concludes that Keith's arguments are not well-taken, that the ALJ applied the correct legal standards in reaching his decision, and that his decision is supported by substantial evidence.

### A.   THE ALJ'S FORMULATION OF KEITH'S RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE

As noted, Keith first argues on appeal that the ALJ failed to include into his RFC any limitations arising from Keith's neuropathy and, in particular, her upper-extremity neuropathy. (Doc. 10 at 4.) More specifically, Keith argues two separate but interrelated contentions: (1) that the ALJ erroneously found her neuropathy impairment not "severe," although every physician on the record diagnosed her with neuropathy; and (2) the ALJ failed to incorporate a limitation arising from her upper-extremity neuropathy – namely, Keith's inability to grasp and finger items. (*Id.* at 4-5.)

---

[5] Notably, Keith does not dispute that there was medical improvement related to her anemia.

-8-

1.    **The ALJ Committed No Reversible Legal Error At Step Two Of The Five-Step Sequential Analysis By Finding Keith's Neuropathy Impairment Not "Severe"**

In regards to Keith's first contention – whether the ALJ erred in finding that Keith's neuropathy impairment was not "severe" at step two of the five-step sequential analysis – the Magistrate Judge concluded that substantial evidence supported the ALJ's decision. (Doc. 12 at 7.) In Keith's objection to the Magistrate Judge's conclusion, she cites evidence on the record to support a finding of a "severe" impairment. (Doc. 13 at 2-4.) However, upon a *de novo* review, the Court overrules Keith's objection, even though it declines to adopt the Magistrate Judge's reasoning, because the Court finds that the ALJ's severity determination of Keith's neuropathy impairment is ultimately immaterial to the resolution of this appeal.

At step two of the five-step sequential analysis, an ALJ determines whether the claimant has any "severe" impairments. 20 C.F.R. § 404.1520(c). The Sixth Circuit construes the severity determination at step two to be "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998). "[A]n impairment can be considered *not severe* only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* (emphasis added). The purpose of this test is to "screen out totally groundless claims." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). The claimant must have a "severe" impairment in order for the ALJ to proceed in the disability determination process. 20 C.F.R. § 404.1520(c). When the ALJ determines that one or more of a claimant's impairments is "severe," the ALJ then must consider both "severe" and "nonsevere" impairments in the subsequent steps of the five-step sequential analysis. *Fisk v. Astrue*, 253 Fed. Appx. 580, 583-84 (6th Cir. 2007); *Higgs*, 880 F.2d at 862. Therefore, if the ALJ considers all "severe" and "not severe" impairments when

-9-

evaluating a claimant's RFC, then "[t]he fact that some of [the] impairments were not deemed to be severe at step two is . . . legally irrelevant." *Anthony*, 266 Fed. Appx. at 457 (citing *Maziarz v. Sec'y of Health & Human Servs*., 837 F.2d 240, 244, 246 (6th Cir. 1987) (upholding the ALJ's RFC findings where the ALJ considered both severe and nonsevere impairments)); *Ortiz-Rosado v. Comm'r of Soc. Sec.*, 12 Fed. Appx. 349, 351 (6th Cir. 2001) (holding that the ALJ did not err in finding that the claimant's mental impairment was not "severe," because the ALJ "adequately considered this impairment when he evaluated her residual functional capacity").

Here, while ALJ Carissimi could have, and perhaps should have, found that Keith's neuropathy impairment was "severe" at step two in the five-step sequential analysis – particularly in light of the *de minimis* standard – the Court finds that the ALJ did not commit a reversible legal error by not doing so. The ALJ found that Keith suffered from two "severe" impairments – anemia and an affective disorder. Thus, the ALJ proceeded to the remaining steps of the sequential analysis; and, as explained in more detail below, the ALJ properly considered Keith's "non-severe" neuropathy impairment when determining her RFC. For example, the ALJ wrote in his findings that he considered Keith's impairments – not just her "severe" impairments – after step two when formulating Keith's RFC. (Tr. 27.) As such, the Court finds it "unnecessary to decide" whether the ALJ erred in classifying Keith's neuropathy impairment as not "severe." *Fisk*, 253 Fed. Appx. at 583-84 (holding that the ALJ committed no reversible legal error by finding the claimant's impairment not "severe" at step two, because the ALJ considered the impairment when determining the claimant's RFC in the remaining steps of the five-step sequential analysis).

-10-

2.      **Substantial Evidence Supports The ALJ's Decision To Decline To Incorporate Keith's Alleged Grasping Limitation Into Her RFC**

In regards to Keith's second contention – whether the ALJ properly incorporated the limitations arising from Keith's neuropathy impairment into her RFC – the Court concludes that the ALJ's decision to craft Keith's RFC without her alleged grasping limitation is supported by substantial evidence.

A RFC is an assessment of a claimant's impairments and any related symptoms that affect what a claimant can or cannot do in a work setting; it is not an enumeration of what she does and does not suffer from. 20 C.F.R. § 404.1545(a)(1); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631-32 (6th Cir. 2004). An ALJ's RFC is supported by substantial evidence if the ALJ considered and reviewed the claimant's entire record and properly incorporated her impairments. *See id.* The ALJ must consider both objective and subjective assessments of a claimant's impairments and any pain or other symptoms that may affect the claimant's RFC. *See* 20 C.F.R. §§ 404.1529(a), 404.1545(a)(3). However, the ALJ will not incorporate any limitations into the RFC that the ALJ determines are unsubstantiated by the record as a whole. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). Moreover, when "evaluating the claimant's subjective complaints . . . an ALJ may properly consider the claimant's credibility, and [the Sixth Circuit] accords great deference to that credibility determination." *Id.* A claimant's credibility is properly discounted "where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.* An ALJ's credibility assessment on appeal is then evaluated according to the Sixth Circuit's two-prong credibility test: first, the Court determines "whether there is objective medical evidence of an underlying medical condition"; and second, if there is, the Court evaluates "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the

-11-

condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). And finally, the ALJ can show whether the claimant can perform specific jobs by posing a hypothetical question to a V.E. that accurately calculates "the claimant's residual functional capacity - i.e., 'a description of what the claimant can and cannot do.'" *Cooper v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 453 (6th Cir. 2007) (quoting *Webb*, 368 F.3d at 631)). It is well-established that the hypothetical question need only incorporate, however, those limitations that the ALJ has accepted as credible. *Infantado v. Astrue*, 263 Fed. Appx. 469, 476-77 (6th Cir. 2008) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Here, after considering all of Keith's impairments, ALJ Carissimi found that Keith retained the RFC to perform a reduced range of "sedentary" work as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a). (Tr. 27-28.) Specifically, the ALJ found:

> Since December 31, 2004, [Keith] has had the [RFC] to perform the exertional requirements of work that do not necessitate lifting or carrying more than 10 [pounds] occasionally and frequently. She can also sit for up to six hours and stand or walk up to two hours each during the course of an eight-hour workday. She can push and pull up to 10 pounds. From a nonexertional standpoint, the claimant is unable to perform work that requires more than occasional climbing stairs, stooping, crouching, kneeling and crawling. She can never climb ladders or scaffolds and she is unable to perform work that requires exposure to extreme cold, high humidity, heat, smoke or fumes. Claimant is unable to perform work that requires operating machinery or working at heights. Moreover, she is limited to simple 1-2-step tasks and work that requires only occasional changes in the work setting.

(*Id.* at 27.) The ALJ then found, relying on the V.E.'s testimony in response to a hypothetical question outlining Keith's RFC, that Keith was not "disabled" as of December 31, 2004. (*Id.* at 26.)

Upon a *de novo* review, the Court finds that ALJ Carissimi properly assessed Keith's impairments and developed a RFC that was supported by substantial evidence.

First, the Court finds that the ALJ did, in fact, consider Keith's "non-severe" neuropathy

-12-

impairment when he determined that Keith retained the RFC to perform only a reduced range of "sedentary" work.  This was evident when the ALJ specifically explained to the M.E. at the hearing that he needed to incorporate into Keith's RFC all of her limitations, including those arising from her neuropathy impairment.  (*Id.* at 424-26.)  The ALJ plainly incorporated into Keith's RFC the limitations arising from that impairment.  Indeed, the ALJ's decision to limit Keith's RFC to "sedentary" was based upon Keith's testimony and her treating physician's report, both of which indicated that Keith's neuropathy impairment affected her legs to a degree that precluded her from driving.  (*Id.*)  The ALJ similarly relied upon the M.E.'s conclusion at the hearing that Keith's RFC was "somewhere between sedentary and light," a conclusion the M.E. reached after taking into account all of Keith's impairments, including her neuropathy.  (*See id.*)

To the extent the ALJ's RFC determination included a decision not to incorporate Keith's alleged grasping limitation arising from her *upper-extremity* neuropathy, moreover, the Court finds that decision was supported by substantial evidence.  The Court reaches this conclusion because the ALJ's review of all of the medical evidence pertaining to Keith's neuropathy condition fairly justified the conclusion that Keith's neuropathy condition did not actually limit the use of her upper extremities.  For instance, Dr. Kadhim reported no functional limitation which precluded Keith from using her upper extremities.  (*Id.* at 433.)  Dr. Kadhim only reported that Keith "experience[d] numbness in the fingertips [and] the patient claimed occasional pin and needle sensation but she denies any weakness."  (*Id.* at 298.)  Similarly, Dr. Segal reported that Keith's neuropathy affected her lower extremities more so than her upper extremities and found no limitations as to Keith's upper extremities.  (*Id.* at 301-02.)  And, Dr. Raheja, Dr. Segal, and Dr. Kadhim unanimously reported "normal findings" for their examinations and tests performed on Keith's upper extremities.  (*Id.* at 23-24.)  Accordingly, the ALJ's decision not to include Keith's alleged grasping limitation

-13-

into his RFC determination, based upon the totality of the evidence regarding Keith's neuropathy impairment, is supported by substantial evidence. *See Maziarz*, 837 F.2d at 243, 246 (holding that the ALJ's RFC determination was supported by substantial evidence when two physicians reported "normal" findings after examining claimant's upper and lower extremities)*; Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (holding that substantial evidence supported the ALJ's RFC findings that were based upon examining physicians' reports in the record). *See also Pompa v. Comm'r of Soc. Sec.*, 73 Fed. Appx. 801, 803-04 (6th Cir. 2003) (affirming the ALJ's RFC findings where objective medical evidence on the record – diagnoses, progress notes, and claimant's statements to the physicians – supported the ALJ's determination); *Brown v. Bowen*, No. 86-6015, 1987 U.S. App. LEXIS 16897, *15 (6th Cir. Dec. 30, 1987) (upholding the ALJ's decision to decline to incorporate into the RFC the claimant's alleged symptoms when none of the physicians' findings confirmed the claimant's symptoms). Indeed, even if the ALJ *could have* reached a different conclusion regarding Keith's grasping limitation from the medical data before him, the Court's conclusion would not change; because the ALJ's decision was supported by substantial evidence, the Court affirms it. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (finding that the reviewing court "may not reverse the Commissioner's decision merely because there exists substantial evidence that supports a different conclusion").

The Court also finds that the ALJ's implicit decision to discredit Keith's testimony regarding her grasping limitation and to decline to incorporate that limitation into her RFC was supported by substantial evidence for two reasons. First, the medical evidence on the record relating to Keith's neuropathy impairment failed to substantiate her testimony; rather, as previously noted, the medical record relating to Keith's neuropathy actually conflicts with her allegation of a grasping limitation due to neuropathy in her upper extremities. *See Infantado*, 263 Fed. Appx. at 475-76

-14-

(affirming that the ALJ's decision to discount the claimant's allegation was supported by substantial evidence, because "to the extent claimant's testimony [is] construed as alleging . . . the symptoms she experienced . . . her complaints are not clearly corroborated even by the notes of her own treating physician"); *Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801-02 (6th Cir. 2004) (upholding the ALJ's decision to discredit the claimant's subjective complaint where medical evidence on the record did not substantiate her allegation); *Blacha v. Sec. of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (holding that the ALJ had an adequate basis to discount the claimant's testimony that conflicted with the medical record).  Second, the Court finds that Keith's testimony at the hearing was somewhat vague with respect to her claimed grasping limitation.  For instance, Keith testified that she had difficulty grasping things "five or six times" within the six months before the hearing, but it is unclear whether that difficulty affected her ability to function to any significant degree.  (Tr. 453.)

Because Keith's testimony may be reasonably construed as either confirming or conflicting with the other evidence on the record, the Court finds that the ALJ's decision to reject her testimony for inconsistency with the record is supported by substantial evidence.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (stating that when the Court reviews an ALJ's credibility determination, the Court is "limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a witness] are reasonable and supported by substantial evidence in the record").  It is significant, moreover that the Court is not to conduct a *de novo* review of the ALJ's credibility decision and is not "charged with the duty of observing . . . [her] demeanor and credibility" at the hearing.  *See Walters*,127 F.3d at 531.  Deferring to an ALJ's decision is appropriate where the ALJ "finds contradictions among the medical reports, claimant's testimony, and other evidence."  *See id.* (stating that "[t]he ALJ's assessment of credibility is entitled to great weight and deference").

-15-

Accordingly, the Court affirms the ALJ's RFC findings, because substantial evidence supports the ALJ's decision not to incorporate Keith's grasping limitation into the RFC and to discredit Keith's testimony regarding that limitation.

Because the Court finds that the ALJ properly assessed Keith's RFC, and adequately considered her functional limitations, it also concludes that the ALJ accurately portrayed her limitations when presenting them to the V.E.  (Tr. 26, 28, 451-52.)  Based on the RFC, the ALJ fashioned the first hypothetical for the V.E. accurately portraying Keith's limitations, and in response, the V.E. found that a sufficient number of jobs existed in the national economy that Keith could perform.[6]  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  Having found that Keith could engage in substantial gainful activity based on the V.E.'s conclusion, the ALJ's decision that Keith was no longer "disabled" was supported by substantial evidence.  *See id.*

Accordingly, the Court finds no merit in Keith's contention that the VE's testimony shows that "such neuropathy – manifested in an ability to grasp or finger only occasionally – would preclude the ability to work."  (Doc. 10 at 5; Tr. 433.)[7]  The Court finds that the ALJ did not err in discounting Keith's allegation of a grasping limitation, affirms the ALJ's formulation of Keith's

---

[6] In the ALJ's first hypothetical to the V.E., he recited verbatim the RFC he formulated for Keith.  (*See id.* at 27, 451-52.)

[7] The ALJ was entitled to reject the V.E.'s testimony in response to the ALJ's second hypothetical, because the second hypothetical "was based on the assumption that [Keith's] testimony was entirely credible."  *Id.* at 779-780 (holding that the ALJ did not err by not accepting the vocational expert's testimony at a second hearing, where "if plaintiff's testimony were accepted as true, he would be unable to perform any [jobs]" when the ALJ ultimately rejected plaintiff's allegations as inconsistent with the objective record).  *See Casey,* 987 F.2d at 1235; *Jones*, 336 F.3d at  476; *Griffith v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 428 (6th Cir. 2007).

RFC, and finds that the conclusions reached based on that RFC were supported by substantial evidence.

**B.   THE ALJ DID NOT ERR IN AFFORDING LESS THAN CONTROLLING WEIGHT TO KEITH'S TREATING PSYCHIATRIST'S OPINION**

The second claim Keith raises on appeal is that the ALJ failed to afford proper deference to the July 23, 2004 opinion of her treating physician, Dr. Laurencic.  More specifically, Keith contends that:  (1) Dr. Laurencic's opinion deserves controlling weight, because her opinion is consistent with the record and well-supported; and (2) even if Dr. Laurencic's opinion is not entitled to controlling weight, Dr. Laurencic's opinion nonetheless deserves deference because of her "treatment relationship, specialization, and consistency."  (Doc. 10 at 6, 9; Doc. 13 at 4.)[8]  On this point, the Magistrate Judge concluded that substantial evidence supported the ALJ's decision to afford Dr. Laurencic's opinion less than controlling weight, because her opinion lacked "supportability" and "consistency" with the rest of the record.  (Doc. 12 at 4.)  After a *de novo* review, the Court first finds that substantial evidence supported the ALJ's decision to afford Dr. Laurencic's July 2004 opinion less than controlling weight.  The Court further finds that, while the ALJ did not give Dr. Laurencic's July 2004 opinion controlling weight, the ALJ did not reject it as Keith contends and, rather, accorded the opinion proper deference.

It is generally the case that "the opinions of treating physicians are given substantial, if not controlling, deference."  *Warner*, 375 F.3d at 390 (citation omitted); 20 C.F.R. § 404.1527(d)(2).  However, a treating physician's opinion is only given controlling weight if it:  (1) is well-supported by clinical findings; and (2) is not inconsistent with other substantial evidence in the record.  20

---

[8] Notably, if the ALJ had afforded Dr. Laurencic's July 2004 opinion controlling weight, then Keith's mental impairment would meet the listed impairment for "disability" at step three of the five-step sequential analysis.  (Tr. 22.)

C.F.R. § 404.1527(d)(2); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).  If the treating

physician's opinion is not controlling, the ALJ then must consider a host of factors in determining

how much weight it deserves, "including the length, frequency, nature, and extent of the treatment

relationship; the supportability and consistency of the physician's conclusions; the specialization

of the physician; and any other relevant factors."  *Id.*  Under the treating physician rule, an ALJ

"must provide 'good reasons' for discounting treating physicians' opinions," and such reasons must

be "sufficiently specific."  *Rogers*, 486 F.3d at 242.  Opinions on some issues, however, such as the

claimant's RFC, "are not medical opinions . . . but are, instead, opinions on issues reserve[d] to the

Commissioner because they are administrative findings that are dispositive of a case, *i.e.*, that would

direct the determination or decision of disability."  20 C.F.R. § 416.927(e); *accord Harris v.

Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) (stating that "[t]he determination of disability is

[ultimately] the prerogative of the [ALJ], not the treating physician").

  The Court finds that the ALJ's decision, even though ultimately inconsistent with that of Dr.

Laurencic, was supported by substantial evidence, because the ALJ reasonably concluded that:  (1)

Dr. Laurencic's July 2004 opinion was not well-supported by clinical findings; and (2) the opinion

was "not consistent with the other evidence of the record."  (Tr. 22.)  Also, the ALJ satisfied the

procedural requirement of giving good reasons for not affording Dr. Laurencic's July 2004 opinion

controlling weight.

  First, the ALJ made clear that he afforded Dr. Laurencic's July 2004 mental RFC assessment

less than controlling weight, because the opinion was not well-supported by clinical findings.

Specifically, Dr. Laurencic failed to provide treatment notes from the July 2004 mental RFC

assessment, or from any of the examinations after her initial January 2004 examination of Keith for

that matter.  (*Id.* at 22.)  A treating physician's RFC assessment must be "well-supported by

-18-

medically acceptable clinical . . . techniques" – such as treatment notes and examination records – in order to be afforded controlling weight.  *See* 20 C.F.R. § 404.1527(d)(2); *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 471-72 (6th Cir. 2006) (holding that the ALJ properly denied controlling weight to one of the treating physician's opinions regarding the claimant's mental impairment, because the opinion was not well-supported by clinical findings when the physician remarked on a form that the claimant was "markedly impaired" after a prior assessment of "moderate limitations," but the physician provided "little or no elaboration" as to the more restrictive opinion); *Jones*, 23 Fed. Appx. at 340 (affirming the ALJ's decision to discredit a treating physician's opinion of the claimant, because "[a]n unsubstantiated entry on an assessment form is not entitled deference by the ALJ") (citation omitted)); *Varley*, 820 F.2d at 779-80 (holding that a treating physician's opinion was "entitled to little weight" because the physician's "one-page letter was not supported by the results of his evaluation, testing, or treatment") (citing *Harris*, 756 F.2d at 435)); *cf. Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508-09 (6th Cir. 2006) (explaining in reference to non-treating physicians that the ALJ was "not bound by conclusory statements"of two examining physicians' mental RFC assessment, because the RFC assessments lacked the sufficient support of "detailed objective criteria and documentation" in that neither physician explained how his findings led to their RFC assessment – such as why claimant's social functioning was "markedly limited" even though there was no observation or discussion that supported the assertion).  No such documentation was presented here.  For these reasons, substantial evidence supports the ALJ's conclusion that Dr. Laurencic's July 2004 opinion warranted less than controlling weight because her RFC assessment was not well-supported.

Second, the ALJ noted in his opinion that Dr. Laurencic's July 2004 opinion was inconsistent with the rest of the evidence in the record and, for that reason, warranted little weight.  Again, the

-19-

Court finds that the ALJ's decision on this point was supported by substantial evidence as well because the medical source opinions – including Dr. Laurencic's own assessments of Keith – are inconsistent with Dr. Laurencic's July 2004 mental RFC assessment.

For instance, Dr. Laurencic's July 2004 opinion is inconsistent with her own ongoing assessments of Keith's mental impairment.  Specifically, at Dr. Laurencic's initial evaluation of Keith in January 2004, Dr. Laurencic made several observations – namely, that Keith "had no interests or hobbies, appeared somewhat shabby with stringy hair," that Keith had social withdrawal, and that Keith had an overall diagnostic impression of "moderate to serious impairments" according to the Global Assessment Functioning ("GAF") rating scale of 60-51.[9]  (Tr. 22, 264-66.)  Then, at her July 2004 evaluation, Dr. Laurencic reached the very same diagnostic impression of Keith – that Keith suffered from "moderate" limitations on a GAF scale.[10]  (*Id.* at 21, 350.)  Yet, unlike her "moderate" mental RFC assessment in January 2004, Dr. Laurencic opined in her July 2004 mental RFC assessment that Keith suffered from "marked" restrictions of activities of daily living – a degree of limitation so much more severe than "moderate," that, if accepted, would have precluded Keith from working.  (*Id.* at 354.)  Thus, the fact that Dr. Laurencic's July 2004 mental RFC assessment was inconsistent with her own previous assessments, was a sufficient basis for the ALJ to not "fully credit" her July 2004 opinion.  *See Villarreal v. Sec'y of HHS*, 818 F.2d 461, 463 (6th Cir. 1987) (finding no err by the Appeals Council for denying weight to a physician's physical

---

[9] Plaintiff's brief defines the GAF as a scale that "incorporates an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  (Doc.10 at 7 n.5 (citing American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1997).)

[10] Dr. Laurencic assigned Keith a "current and highest in the past year GAF ratings of 50/100."  (Tr. 354.)

-20-

assessment report, "which contained no substantiating medical data and was inconsistent with [the physician's] previous opinions") (citing *Kirk v. Sec. Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)).  *See also Mansfield-Flatt v. Comm'r of Soc. Sec.*, No. 98-1357, 1999 U.S. App. LEXIS 5360, at *5 (6th Cir. Mar. 22, 1999) (holding that the ALJ was "not bound by the initial diagnosis" of the treating physician when his "initial diagnosis regarding the severity of [the claimant's] mental condition in September 1994 [was] strongly controverted by his subsequent diagnoses – a few months later and over a year later) (citing *Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1308-09 (6th Cir. 1990)).

Similarly, the findings by Mr. Richard Davis, a non-treating and one-time examining state agency psychologist, and Dr. Deepak Raheja, another treating physician (albeit not a psychiatrist), are inconsistent with Dr. Laurencic's July 2004 mental RFC assessment.  Keith herself points out that Mr. Davis's May 2003 report contained observations and a diagnostic impression that were similar to Dr. Laurencic's observations in her January 2004 and July 2004 evaluations.  (Doc. 13 at 4; Tr. 142.)  Despite these similarities, Dr. Laurencic reached a far more extreme conclusion regarding Keith's limitations.  While the opinion of a "non-treating source" like Mr. Davis is generally afforded less deference than the opinion of a "treating physician," Mr. Davis' opinion was nonetheless evidence in the record inconsistent with Dr. Laurencic's "treating physician" opinion and properly considered by the ALJ.  And, as noted, a treating physician's opinion only warrants controlling deference if it is not inconsistent with other substantial evidence on the record.  *See* 20 C.F.R. § 404.1527(d)(1)-(2) (stating that "regardless of its source, [ the ALJ] will evaluate every medical opinion"); *Nelson*, 195 Fed. Appx at 470-71 (noting that the ALJ did not err by affording greater weight to a non-treating physician's report that contained a diagnostic impression – the "GAF" score – that  was consistent with the report's RFC assessment).  Similarly, another treating

physician, Dr. Raheja, reported, after a neurological examination of Keith, that her "mood was slightly depressed but her comprehension functions were well preserved" (Tr. 23, 206) – a finding that plainly conflicts with Dr. Laurencic's finding that Keith's "comprehension functions" were "severe" (Tr. 354, 417).  Accordingly, even though Dr. Laurencic is a treating physician, the ALJ was entitled to afford her July 2004 opinion less than controlling weight, because the opinion was inconsistent with other substantial evidence on the record.  *See id.*; *Gribbens v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 777, 779 (6th Cir. 2002) (holding that the ALJ properly rejected the treating physician's opinion for contradicting  "other medical evidence, including another treating physician's GAF score" and the opinion of the M.E., a non-examining medical consultant); *Hash v. Comm'r of Soc. Sec.*, No. 08-5654, 2009 U.S. App. LEXIS 2678, *18-23 (6th Cir. Feb. 10, 2009) (finding that the ALJ was entitled to reject the treating physician's mental impairment assessment when a non-treating physician's mental impairment assessment was more consistent with the rest of the record).

Regarding Keith's second contention – that even if the ALJ did not afford Dr. Laurencic's July 2004 opinion controlling weight, her opinion still deserved deference – the Court finds that the ALJ *did* consider Dr. Laurencic's opinion and did not reject the opinion as Keith argues; he properly afforded the opinion some, but "little probative weight."  (Doc. 10 at 8; Doc. 13 at 4, 6.)  The ALJ explained in his opinion that he declined to "fully credit" Dr. Laurencic's July 2004 opinion – *i.e.*, that he accepted part of her opinion and assigned "little probative weight" to another part.  (Tr. 22.) Specifically, the ALJ accepted Dr. Laurencic's diagnosis that Keith suffered from a bipolar affective

disorder type II.[11]  (*Id.*)  However, as discussed, the ALJ afforded little weight to Dr. Laurencic's

mental RFC assessment of Keith's functional limitations – the "B" criteria of the Listed Impairments

that measures the severity of a mental impairment.[12]  (*Id.* at 21-22.)  It is clear in the ALJ's opinion

that he did not outright reject Dr. Laurencic's opinion, rather he did not "fully credit" it, stating

"[i]n regards to [Keith's] "B" criteria . . .[Dr. Laurencic's] opinion as to the ratings under the

respective categories of the "B" criteria is unpersuasive and has *little probative weight* in this

decision."  (*Id.* at 22.) (emphasis added).  Thus, the ALJ assigned "little" weight to Dr. Laurencic's

July 2004 opinion, not zero weight as Keith argues.

Ultimately, the Court determines that the ALJ's decision to only give minimal credit to Dr.

Laurencic's July 2004 opinion is supported by substantial evidence and that the ALJ satisfied the

requirement to provide good reasons for doing so.  The ALJ summarized the findings of Dr.

Laurencic, Mr. Davis, and Dr. Raheja, and, while crediting Dr. Laurencic's treatment relationship

with Keith, and her opinion in some respects, discounted Dr. Laurencic's conclusory mental RFC

assessment that Keith would be unable to maintain substantial gainful activity.  *See Kidd v. Comm'r*

*of Soc. Sec.*, 283 Fed. Appx. 336, 340-42 (6th Cir. 2008).  As discussed, the ALJ explained his

---

[11] Dr. Laurencic was the only source that diagnosed Keith with a bipolar affective disorder.  (*See* Tr. 21.)  And, the ALJ accepted Dr. Laurencic's diagnosis, finding that Keith had a "severe mental impairment"of a bipolar affective disorder.  (*See id.* at 21, 27.)  The ALJ stated in his opinion that he "finds that the claimant has a bipolar affective disorder. . . . In this regard, the [ALJ] gives greater weight to the diagnostic impression of Dr. Laurencic as she has had the opportunity to observe and follow claimant over an extended period of time."  (*Id.* at 22.)

[12] The "B" criteria for functional limitations include: "(1) restrictions of activities of daily living; (2) difficulty in maintaining social functioning; (3) deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere); and (4) episodes of deterioration or decompensation in work or work-like setting which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)."  *See* 20 C.F.R. § 404.1520(c)-(d).

conclusion by noting that Dr. Laurencic's opinion was not well-supported and was inconsistent with the other substantial evidence in the record.  The ALJ acknowledged Dr. Laurencic's specialization as a "M.D." who "performed a psychiatric evaluation" on Keith on January 13, 2004 (Tr. 21.), and Dr. Laurencic's ongoing treatment relationship with Keith,[13] but properly resolved conflicts in the medical evidence in a manner that was unfavorable to Keith.  *See* 20 C.F.R. § § 404.1527 (b)-(d).  Significantly, while the ALJ must "use medical sources, including [the] treating source, to provide evidence . . . on the nature and severity of [a claimant's] impairments," determining a claimant's RFC remains the "final responsibility" of the ALJ.  20 C.F.R. § 404.1527(e)(2).  In this regard, the ALJ was not bound to "give any special significance to the source of an opinion" for an RFC determination, an issue expressly reserved for him.  *Id.* at § 404.1527(e)(2)-(3).  Accordingly, the Court affirms the ALJ's decision to afford Dr. Laurencic's July 2004 opinion less than controlling weight because the ALJ applied the correct legal standard in doing so and his decision was supported by substantial evidence.

---

[13] In this regard, the ALJ stated he gave "greater weight to the diagnostic impression of Dr. Laurencic as she has had the opportunity to observe and follow claimant over an extended period of time of at least seven months as opposed to the one-time evaluation by Mr. Davis." (Tr. 22.)

-24-

**IV.**     <u>**CONCLUSION**</u>

The Court finds that the ALJ's decision denying in part Keith's application and granting her a closed period of disability was reached by applying the correct legal standards and was supported by substantial evidence.  As such, for all of the above reasons, the Court **OVERRULES** Keith's objections, **AMENDS** and **ADOPTS** the R&R, and **AFFIRMS** the final administrative decision of the Commissioner.

**IT IS SO ORDERED.**

**/s/ Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated:  March 27, 2009**